Marc D. Fink (MN Bar No. 343407)
Center for Biological Diversity
209 East 7th Street
Duluth, Minnesota 55805
Tel: 218-464-0539
Email: mfink@biologicaldiversity.org
*Applicant Pro Hac Vice*

Brian Segee (Cal. Bar No. 200795)
Center for Biological Diversity
660 S. Figueroa Street, Suite 1000
Los Angeles, CA 90017
Tel: 805-750-8852
Email: bsegee@biologicaldiversity.org
*Applicant Pro Hac Vice*

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA
### TUCSON DIVISION

| | |
|---|---|
| Center for Biological Diversity; and Maricopa Audubon Society, | ) Case No.: |
| | ) |
| Plaintiffs, | ) **COMPLAINT FOR** |
| | ) **DECLARATORY AND** |
| | ) **INJUNCTIVE RELIEF** |
| v. | ) |
| | ) |
| David Bernhardt, Secretary of the Interior; | ) |
| U.S. Fish and Wildlife Service; and | ) |
| U.S. Forest Service, | ) |
| | ) |
| Defendants. | ) |

**INTRODUCTION**

1.      Plaintiffs Center for Biological Diversity and Maricopa Audubon Society challenge Defendants' failure to adequately protect and conserve the critically endangered New Mexico meadow jumping mouse on the Apache-Sitgreaves National Forest.

2.      More specifically, Plaintiffs challenge (1) the ongoing failure of Defendants United States Forest Service ("Forest Service") and United States Fish and Wildlife Service ("FWS") to reinitiate and complete Endangered Species Act ("ESA") consultation on the ongoing impacts of the Land Management Plan ("LMP") for the Apache-Sitgreaves National Forest on the endangered New Mexico meadow jumping mouse and its designated critical habitat, as required by the ESA; (2) Defendants David Bernhardt, Secretary of the Interior ("Secretary") and FWS' failure to prepare a Recovery Plan for the New Mexico meadow jumping mouse, as required by the ESA; (3) the Forest Service's failure to carry out, with FWS' assistance, programs on the Apache-Sitgreaves National Forest for the conservation of the New Mexico meadow jumping mouse, as required by the ESA; and (4) the Forest Service's failure to maintain a viable population of the New Mexico meadow jumping mouse on the Apache-Sitgreaves National Forest, as required by the National Forest Management Act ("NFMA").

3.      Plaintiffs seek declaratory relief that Defendants are in ongoing violation of the ESA and NFMA for failing to adequately protect and conserve the New Mexico meadow jumping mouse on the Apache-Sitgreaves National Forest.  Plaintiffs also seek

2

injunctive relief to ensure adequate interim protection for the New Mexico meadow jumping mouse until Defendants are in full compliance with the ESA and NFMA.

## JURISDICTION

4.      Jurisdiction is proper in this Court under 28 U.S.C. § 1331; 28 U.S.C. § 1346; 5 U.S.C. §§ 551 *et seq*.; and 16 U.S.C. § 1540(g) because this action involves the United States as a defendant and arises under the laws of the United States, including the ESA, 16 U.S.C. §§ 1531 *et seq*.; NFMA, 16 U.S.C. § 1604; and the APA, 5 U.S.C. §§ 551 *et seq*.  Plaintiffs provided Defendants with notice of Plaintiffs' intent to file suit pursuant to the ESA citizen suit provision.  16 U.S.C. § 1540(g)(2).  An actual justiciable controversy exists between Plaintiffs and Defendants.  The requested relief is proper under 28 U.S.C. §§ 2201 and 2202; 5 U.S.C. §§ 705 and 706; and 16 U.S.C. § 1540(g). The challenged agency actions are final and subject to this Court's review under 5 U.S.C. §§ 702, 704, and 706.

## VENUE

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) and 16 U.S.C. § 1540(g)(3)(A), because Defendants FWS and the Forest Service have offices in the district, a substantial part of the events, omissions, and violations giving rise to the Plaintiffs' claims occurred in the district, and Plaintiffs reside in the district.

6.      Venue is proper in the Tucson Division because some of the activities at issue and the resulting harm is occurring in Greenlee County, and the Center for Biological Diversity's headquarters are in Tucson.

**PARTIES**

7.      Plaintiff Center for Biological Diversity is a non-profit corporation headquartered in Tucson, Arizona, with offices in a number of states and Mexico.  The Center works through science, law, and policy to secure a future for all species, great or small, hovering on the brink of extinction.  The Center is actively involved in endangered species and habitat protection issues nationwide.  The Center has over 70,000 members and more than 1.7 million supporters throughout the United States and the world.

8.      Plaintiff Maricopa Audubon Society is a nonprofit organization with over 3,000 members dedicated to the study and enjoyment of birds and other wildlife, and to the protection and restoration of habitat in the Southwest.  Maricopa Audubon Society is run by volunteers and strives to protect and restore wildlife habitat through education and community involvement.

9.       Plaintiffs bring this action on their own behalf, and on behalf of their staff and members who derive scientific, aesthetic, recreational, and spiritual benefits from the Apache-Sitgreaves National Forest, including the areas and habitat where the endangered New Mexico meadow jumping mouse is found.

10.      Plaintiffs' members use and enjoy the Apache-Sitgreaves National Forest for a variety of purposes, including hiking, fishing, camping, photographing scenery and wildlife, viewing wildlife and signs of wildlife, and engaging in other vocational, scientific, and recreational activities.  The areas of the Apache-Sitgreaves National Forest that Plaintiffs' members use and enjoy include specific areas where the New Mexico

meadow jumping mouse may be found.  Plaintiffs' members' use and enjoyment of these areas is significantly enhanced knowing that the endangered jumping mouse is still likely to be present in these areas.

11.     Plaintiffs' members derive health, aesthetic, recreational, inspirational, spiritual, scientific, and educational benefits from their activities within the Apache-Sitgreaves National Forest.  Plaintiffs' members intend to continue to use and enjoy the Apache-Sitgreaves National Forest frequently and on an ongoing basis in the future, including during the spring and summer of 2020.  The areas of the Apache-Sitgreaves National Forest that Plaintiffs' members intend to continue to use and enjoy include specific areas where the New Mexico meadow jumping mouse is likely to be found.

12.     The health, aesthetic, recreational, inspirational, spiritual, scientific, and educational interests of the Plaintiffs and their members have been and will continue to be adversely affected and irreparably injured if Defendants' ongoing violations of the ESA, NFMA, and the APA continue.  These are actual, concrete injuries caused by Defendants' violations of the ESA, NFMA, and the APA.  The relief sought will redress the Plaintiffs and their members' injuries.

13.     David Bernhardt, Secretary of the Interior ("Secretary"), is charged with implementing the ESA, including the mandatory duty to develop and implement Recovery Plans for the conservation and survival of endangered and threatened species. David Bernhardt is sued in his official capacity as the Secretary of the Interior.

14.     Defendant U.S. Fish and Wildlife Service ("FWS") is an agency within the

U.S. Department of the Interior.  It and its officers are responsible for administering the ESA, particularly regarding potential impacts to wildlife species that have been listed as threatened or endangered with extinction pursuant to the ESA.

15.     Defendant U.S. Forest Service ("Forest Service") is an agency within the U.S. Department of Agriculture.  It and its officers are responsible for the lawful management of the National Forest System, including the Apache-Sitgreaves National Forest.

## THE ENDANGERED SPECIES ACT

16.     Congress enacted the ESA in 1973 to provide "a program for the conservation of . . . endangered species and threatened species."  16 U.S.C. § 1531(b). Section 2(c) of the ESA establishes that it is the policy of Congress that all federal agencies shall seek to conserve threatened and endangered species, and shall utilize their authorities in furtherance of the purposes of the ESA.  16 U.S.C. § 1531(c)(1).

17.     The ESA defines "conservation" to mean "the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to this Act are no longer necessary." 16 U.S.C. § 1532(3).

18.     Section 4 of the ESA directs the Secretary of the Interior to list species that are threatened or endangered with extinction, and to designate "critical habitat" for such species.  16 U.S.C. § 1533(a).  "Critical habitat" is the area that contains the physical or biological features essential to the "conservation" of the species and which may require

6

special protection or management considerations.  16 U.S.C. § 1532(5)(A).

19.     Section 4 of the ESA requires the Secretary to develop and implement Recovery Plans for threatened and endangered species, unless the Secretary finds that such a plan will not promote the conservation of the species.  16 U.S.C. § 1533(f).

20.     Section 7(a)(1) of the ESA requires each federal agency, in consultation with FWS, to carry out programs for the conservation of threatened and endangered species.  16 U.S.C. § 1536(a)(1).

21.     Section 7(a)(2) of the ESA requires each federal agency, in consultation with FWS, to ensure that any action authorized, funded, or carried out by the agency is not likely to jeopardize the continued existence of any threatened or endangered species, or result in the destruction or adverse modification of the critical habitat of such species.  16 U.S.C. § 1536(a)(2).  During consultation, both the action agency and FWS must use the best scientific data available.  *Id*.

22.     For each proposed action, the action agency must request from FWS whether any listed or proposed species may be present in the area of the proposed action.  16 U.S.C. § 1536(c)(1); 50 C.F.R. § 402.12(c).  If listed or proposed species may be present, the action agency must prepare a "biological assessment" to determine whether the listed species may be affected by the proposed action.  16 U.S.C. § 1536(c)(1); 50 C.F.R. § 402.12.

23.     If the action agency determines that its proposed action may affect any listed species or critical habitat, the agency must engage in "formal consultation" with

7

FWS.  50 C.F.R. § 402.14(a).  However, a federal agency is not required to initiate formal consultation if the agency determines, with the written concurrence of FWS, that the proposed action is "not likely to adversely affect" any listed species or critical habitat. 50 C.F.R. § 402.14(b)(1).

24.    To complete formal consultation, FWS must provide the action agency with a "biological opinion" explaining how the proposed action will affect the listed species or critical habitat.  16 U.S.C. § 1536(b); 50 C.F.R. § 402.14(h).  If FWS concludes in the biological opinion that the proposed action is likely to jeopardize the continued existence of a listed species, or result in the destruction or adverse modification of critical habitat, FWS must outline "reasonable and prudent alternatives" to the proposed action that FWS believes would not jeopardize listed species or result in the destruction or adverse modification of critical habitat.  16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. § 402.14(h)(2).

25.    If FWS concludes in the biological opinion that the proposed action is not likely to jeopardize the continued existence of a listed species, or result in the destruction or adverse modification of critical habitat, FWS must provide an "incidental take statement" ("ITS") along with the biological opinion, specifying the amount or extent of such incidental taking on the species, any "reasonable and prudent measures" that FWS considers necessary or appropriate to minimize such impact, and setting forth the "terms and conditions" that must be complied with by the action agency to implement those measures.  16 U.S.C. § 1536(b)(4); 50 C.F.R. § 402.14(i).

26.    In order to monitor the impacts of incidental take, the action agency must

report the impact of its action on the listed species to FWS.  50 C.F.R. § 402.14(i)(3).  If during the course of the action the amount or extent of incidental taking is exceeded, the action agency and FWS must reinitiate consultation immediately.  50 C.F.R. § 401.14(i)(4); 50 C.F.R. § 402.16.

27.     The reinitiation of formal consultation is required and must be requested by FWS or the action agency where discretionary federal involvement or control over the action has been retained or is authorized by law, and if (1) the amount or extent of taking specified in the incidental take statement is exceeded; (2) new information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered; (3) the action is modified in a manner that causes an effect to the listed species or critical habitat that was not considered in the biological opinion; or (4) a new species is listed or critical habitat designated that may be affected by the identified action.  50 C.F.R. § 402.16(a).

28.     After the initiation or reinitiation of consultation, the action agency is prohibited from making any irreversible or irretrievable commitment of resources with respect to the action which may foreclose the formulation or implementation of any reasonable and prudent alternative measures.  16 U.S.C. § 1536(d).

29.     Section 9 of the ESA and its implementing regulations prohibit the unauthorized "take" of any endangered or threatened species of fish or wildlife.  16 U.S.C. § 1538(a)(1); 16 U.S.C. § 1533(d); 50 C.F.R. § 17.31.  "Take" is defined broadly to include harming, harassing, trapping, capturing, wounding or killing a protected

species either directly or by degrading its habitat.  16 U.S.C. § 1532(19).

30.     Taking that is in compliance with the terms and conditions of an ITS in a biological opinion is exempt from the Section 9 take prohibition.  16 U.S.C. § 1536(o)(2).

## THE NATIONAL FOREST MANAGEMENT ACT

31.     NFMA requires the Forest Service to develop, maintain, and, as appropriate, revise land and resource management plans ("land management plans") for units of the National Forest System.  16 U.S.C. § 1604(a).

32.     NFMA imposes substantive duties on the Forest Service, one of which is the duty to "provide for diversity of plant and animal communities."  16 U.S.C. § 1604(g)(3)(B).

33.     Regulation 219.19, one of the regulations promulgated by the Forest Service in 1982 to insure such diversity of plant and animal communities, requires that "[f]ish and wildlife habitat shall be managed to maintain viable populations of existing native and desired non-native vertebrate species in the planning area."  36 C.F.R. § 219.19 (1982).  "For planning purposes, a viable population shall be regarded as one which has the estimated numbers and distribution of reproductive individuals to insure its continued existence is well distributed in the planning area."  *Id.*

34.     To insure that viable populations will be maintained, the Forest Service is required to provide habitat to support, at least, a minimum number of reproductive individuals and that habitat must be well distributed so that those individuals can interact with others in the planning area.  36 C.F.R. § 219.19 (1982).

10

35.   In order to estimate the effects of the land management plan on fish and wildlife populations, the Forest Service must identify "management indicator species."  36 C.F.R. § 219.19(a)(1) (1982).  "These species shall be selected because their population changes are believed to indicate the effects of management activities."  *Id.*

36.   "In the selection of management indicator species, the following categories shall be represented where appropriate: Endangered and threatened plant and animal species identified on State and Federal lists for the planning area; species with special habitat needs that may be influenced significantly by planned management programs; species commonly hunted, fished, or trapped; non-game species of special interest; and additional plant or animal species selected because their population changes are believed to indicate the effects of management activities on other species of selected major biological communities or on water quality."  36 C.F.R. § 219.19(a)(1) (1982).

37.   The Forest Service must identify the habitat that it determines to be critical for threatened and endangered species, and must prescribe measures to prevent the destruction or adverse modification of such habitat.  36 C.F.R. § 219.19(a)(7) (1982).  Additionally, "[o]bjectives shall be determined for threatened and endangered species that shall provide for, where possible, their removal from listing as threatened and endangered species through appropriate conservation measures,

including the designation of special areas to meet the protection and management needs of such species." *Id*.

38.     Section 219.26 of the NFMA regulations further requires the Forest Service to provide for diversity of plant and animal communities.  36 C.F.R. § 219.26 (1982).  "Such diversity shall be considered throughout the planning process," and inventories must include "quantitative data making possible the evaluation of diversity in terms of its prior and present condition." *Id*.

39.     Section 219.27 of the NFMA regulations sets forth "minimum specific management requirements," which must be met to accomplish the goals and objectives for the National Forest System.  36 C.F.R. § 219.27 (1982).  The management requirements must guide the development, approval, and implementation of land management plans. *Id*.  These management requirements require the Forest Service to provide for and maintain the diversity of plant animal communities.  36 C.F.R. § 219.27(a)(5).

40.     The management requirements further require the Forest Service to provide for adequate fish and wildlife habitat to maintain viable populations of existing species, and to provide that habitat for management indicator species is maintained and improved.  36 C.F.R. § 219.27(a)(6) (1982).  And the management requirements require the Forest Service to include measures for preventing the destruction or adverse modification of critical habitat for threatened and endangered

species.  36 C.F.R. § 219.27(a)(7) (1982).

41.     In preparing the current Land Management Plan ("LMP") for the Apache-Sitgreaves National Forest, the Forest Service relied on the 1982 NFMA regulations.

42.     The Forest Service provides guidance for meeting its NFMA obligations in its Forest Service Manual.  The Manual states that it is Forest Service policy to provide habitat management direction to support the recovery of federally listed species.  FSM § 2620.3(2).  The Forest Service is to specify in LMPs "the standards, guidelines, and prescriptions needed to meet identified habitat goals and objectives for wildlife and fish, including endangered, threatened, and sensitive animal and plant species."  FSM § 2620.3(4).

43.     In selecting "management indicator species" ("MIS"), the Forest Service Manual provides that federally listed threatened and endangered species should be selected if the land management plan potentially impacts those species, or if opportunities exist to enhance recovery efforts.  FSM § 2621.1(2).

44.     To preclude trends that may result in the need for federal listing, the Forest Service Manual directs the agency to develop conservation strategies for sensitive species whose continued existence may be negatively affected by the LMP.  FSM § 2621.2.  Biological assessments may also be needed for threatened or endangered species for which Recovery Plans are not available.  *Id*.

45.     The management direction in a LMP must contribute to the recovery of federal listed threatened and endangered species.  FSM § 2622.01(1).  The Forest Service

must manage habitats at levels that accomplish the recovery of federally listed species so

that the protective measures under the ESA are no longer necessary.  FSM § 2672.21.

**FACTUAL BACKGROUND**

**I.**    **The New Mexico Meadow Jumping Mouse is Critically Endangered with Extinction**

    A.    FWS' Species Status Assessment Report for the New Mexico Meadow Jumping Mouse

    46.    On May 27, 2014, FWS completed a "Species Status Assessment Report"

("Assessment Report") for the New Mexico meadow jumping mouse.  FWS concluded,

> Our assessment found the New Mexico meadow jumping mouse having an overall
> low viability (probability of persistence) and a high probability of extinction in the
> near term (between now and the next 10 years), and a decreasing viability in the
> long-term future (beyond 10 years) because we expect remaining populations are
> vulnerable to extirpation.

    47.    The New Mexico meadow jumping mouse is a small mammal whose

historical distribution likely included riparian areas and wetlands along streams in the

Sangre de Cristo and San Juan Mountains from southern Colorado to central New

Mexico, including the Jemez and Sacramento Mountains and the Rio Grande Valley from

Española to Bosque del Apache National Wildlife Refuge, and into parts of the White

Mountains in eastern Arizona.

    48.    The New Mexico meadow jumping mouse hibernates about 8 or 9 months

out of the year, which is longer than most other mammals.  It is therefore only active 3 or

4 months during the summer.  Within this short timeframe, the jumping mouse must

breed, birth and raise young, and store up sufficient fat reserves to survive the next year's

hibernation period.  In addition, the jumping mouse only lives 3 years or less, and has one small litter annually with seven or fewer young.

49.     The New Mexico meadow jumping mouse has exceptionally specialized habitat requirements to support its life history needs.  Habitat requirements are characterized by tall (averaging at least 24 inches), dense riparian herbaceous vegetation primarily composed of sedges and forbs.  This suitable habitat is only found when wetland vegetation achieves full growth potential associated with seasonally available or perennial flowing water.

50.     This riparian vegetation is an important resource need for the New Mexico jumping mouse because it provides vital food sources (insects and seeds), as well as the structural material needed for building day nests that are used as shelter from predators.  In addition, individual jumping mice need intact upland areas where they can build nests or use burrows to give birth to young in the summer and to hibernate over the winter.

51.     Connectivity between patches of suitable habitat is necessary to facilitate daily and seasonal movements, and dispersal to increase the likelihood of long-term viability of New Mexico meadow jumping mouse populations.

52.     At the time of the Assessment Report, FWS found that there were 29 remaining populations of New Mexico meadow jumping mouse spread across eight geographic management areas (2 in Colorado, 15 in New Mexico, and 12 in Arizona).  Nearly all of these populations were isolated and widely separated, and each had patches of suitable habitat that were too small to support resilient populations.  Moreover, 11 of

15

the 29 populations were considered substantially compromised at that time due to water shortages, excessive livestock grazing, wildfire and flooding, and some of these populations may have already been extirpated.

53.     According to the Assessment Report, the primary sources of current and future habitat loss for the New Mexico meadow jumping mouse include pressure from livestock grazing (which removes the needed vegetation), water management use, lack of water due to drought (exacerbated by climate change), and wildfires (also exacerbated by climate change).

54.     Livestock grazing affects the New Mexico meadow jumping mouse when it eliminates or reduces herbaceous plants and litter or alters the composition and structure of herbaceous riparian habitats used by the species.

55.     At the population level, grazing can result in the extirpation of New Mexico meadow jumping mouse populations.  Research has shown that the jumping mouse does not persist in areas when it's habitat is subjected to heavy livestock grazing pressure.

56.     Habitat loss from livestock grazing results in fragmentation, which is the disruption of extensive habitats into smaller, isolated patches.  When grazing results in the loss of suitable habitat for the New Mexico meadow jumping mouse, movement and dispersal between populations are unlikely to occur because movements and dispersal likely occur almost exclusively along riparian areas with appropriate habitat.

57.     Grazing has and continues to alter the suitability of riparian habitats historically used by the New Mexico meadow jumping mouse.  More specifically,

16

grazing on National Forest lands in the White Mountains of Arizona, as well as the Jemez and Sacramento Mountains of New Mexico, has likely caused the extirpation of jumping mouse populations by eliminating or significantly altering jumping mouse habitat, resulting in the fragmentation and isolation of the remaining populations.

58.     The effects of grazing on the New Mexico meadow jumping mouse can be evident in a very short amount of time.  Unless livestock grazing is severely restricted or excluded entirely through fencing, grazing can cause a rapid loss of herbaceous cover and eliminate dense riparian herbaceous vegetation that is suitable jumping mouse habitat.

59.     Grazing has the greatest potential for negative impacts on the New Mexico meadow jumping mouse and riparian habitat.

60.     The presence of a functioning livestock exclosure has been reported as the best predictor of New Mexico meadow jumping mouse occupancy in montane riparian areas.  However, FWS found that livestock grazing continued to be documented within many of the fenced exclosures surrounding the documented jumping mouse populations when fencing was cut or not maintained, gates were open, or fences were eliminated.

61.     According to the Assessment Report, the New Mexico meadow jumping mouse has been identified by the Forest Service as a sensitive species since 1990, and this designation required the Forest Service to provide a proactive approach to prevent a trend toward listing under the ESA and to ensure the continued existence of viable, well-distributed populations.  FWS concluded in the Report, however, that current grazing

practices on National Forest lands are not conducive to the conservation of the jumping mouse, but rather have likely resulted in the extirpation of many historical locations.

62.     FWS determined in the Assessment Report that due to the isolation and small patch sizes for the remaining populations of the New Mexico meadow jumping mouse, the chances of local population extirpation are extremely high for all 29 potentially remaining populations.

B.     FWS' Listing of the New Mexico Meadow Jumping Mouse as an Endangered Species under the ESA

63.     On June 10, 2014, FWS formally designated the New Mexico meadow jumping mouse as an endangered species under the ESA.  79 Fed. Reg. 33119 (June 10, 2014).  The designation became effective on July 10, 2014.  *Id.*  The ESA defines "endangered species" as a species that is in danger of extinction throughout all or a significant portion of its range."   16 U.S.C. § 1532(6).

64.     FWS determined in its final listing rule that the New Mexico meadow jumping mouse meets the definition of an endangered species primarily because of the present or threatened destruction, modification, or curtailment of its habitat or range; the inadequacy of existing regulatory mechanisms; and other natural and manmade factors affecting its continued existence.  79 Fed. Reg. at 33119.

65.     As explained by FWS in the final listing rule, the remaining small, isolated New Mexico meadow jumping mouse populations are particularly threatened with extirpation from habitat loss and modifications.  79 Fed. Reg. at 33134.  The main sources of habitat loss and degradation include grazing pressure (which removes the

18

needed vegetation), water management and use, loss of water due to drought (exacerbated by climate change), and wildfires (also exacerbated by climate change).  *Id.*

C.    FWS' Critical Habitat Rule for the New Mexico Meadow Jumping Mouse

66.    On March 16, 2016, FWS issued a final rule designating critical habitat for the New Mexico meadow jumping mouse pursuant to the ESA.  81 Fed. Reg. 14264 (March 16, 2016).

67.    In total, FWS designated an area of approximately 13,973 acres along 169.3 miles of flowing streams, ditches, and canals as critical habitat in eight units within Colfax, Mora, Otero, Sandoval, and Socorro Counties in New Mexico; Las Animas, Archuleta, and La Plata Counties in Colorado; and Greenlee and Apache Counties in Arizona.

68.    Unit 5, "White Mountains," consists of 6,046 acres along 72.4 miles of streams within eight subunits on private lands and areas owned by the Forest Service and the State of Arizona within Greenlee and Apache Counties, Arizona.

D.    The Secretary of Interior and FWS' Failure to Prepare A Recovery Plan for the New Mexico Meadow Jumping Mouse

69.    In June, 2014, FWS prepared a twelve-page "Recovery Outline" for the New Mexico meadow jumping mouse.

70.    FWS states within the 2014 Recovery Outline that it was intended to be an interim strategy to guide the conservation and recovery of the New Mexico meadow jumping mouse until a final Recovery Plan for the endangered species could be completed.

71.     According to the Recovery Outline, the main stressor for the jumping mouse is habitat loss, and the main sources of habitat loss are livestock grazing and the lack of water.

72.     FWS states in the 2014 Recovery Outline that shortly after the New Mexico meadow jumping mouse is listed as endangered, a Recovery Plan will be prepared pursuant to Section 4(f) of the ESA.

73.     The New Mexico meadow jumping mouse was listed as an endangered species in June, 2014.  At this time, the Secretary of Interior and FWS have still not prepared a Recovery Plan for the species.

74.     FWS has worked with the National Marine Fisheries Service to prepare "Recovery Planning Guidance," which was last updated in July 2018 and is available on FWS' website.[1]

75.     According to the Recovery Planning Guidance, the prompt development and implementation of a Recovery Plan will ensure that recovery efforts target limited resources effectively and efficiently into the future.

76.     The Recovery Planning Guidance states that the Recovery Plan serves as a road map for species recovery, and is one of the most important tools to ensure sound scientific and logistical decision-making throughout the recovery process.

---

[1] https://www.fws.gov/endangered/esalibrary/pdf/Interim_Recovery_Guidance_Version_1_4.pdf

77.     Recovery Plans guide federal agencies in fulfilling their obligations under ESA Section 7(a)(1) to carry out programs for the conservation of threatened and endangered species.

78.     According to the Recovery Planning Guidance, "Recovery Outlines" should be completed within 60 days of a species being listed as threatened or endangered, and approved within 90 days of listing.  The short time frame for completing the Recovery Outline is meant to ensure that its completion will not detract from the recovery planning effort that should be underway shortly after the species is listed.

79.     According to the Recovery Planning Guidance, final Recovery Plans should be completed within 2.5 years of listing, unless an extension for a particularly complex plan has been approved by the Headquarters office.  In order to reach this time frame, draft Recovery Plans should be completed within 1.5 years of listing.

**II.     The 2015 Land Management Plan for the Apache-Sitgreaves National Forest**

80.     In August, 2015, the Forest Service completed a revised "Land Management Plan" ("LMP") for the Apache-Sitgreaves National Forest.  In preparing the 2015 LMP, the Forest Service relied on and implemented the 1982 NFMA regulations.

81.     The LMP provides guidance for all project and activity decision-making on the Apache-Sitgreaves National Forest for approximately the next 15 years.  All site-specific projects and activities on the Apache-Sitgreaves National Forest must comply with the standards and guidelines in the LMP.

82.   The LMP refers to 14 major "potential natural vegetation types" ("PNVT"s) within the Apache-Sitgreaves National Forest.  The 14 PNVTs can be assembled into 5 groupings:  riparian, forest, woodland, grassland, and chaparral.  Riparian PNVTs include wetland/cienegas, and three riparian forested PNVTs: mixed broadleaf deciduous, montane willow, and cottonwood-willow.

83.   According to the LMP, the vegetation conditions for federally listed species are managed consistent with the habitat requirements specified in the appropriate species Recovery Plan.

84.   The Forest Service determined in the LMP that the majority of herbaceous understory vegetation within the riparian forest PNVTs on the Apache-Sitgreaves National Forest "is highly to severely departed from desired conditions."

85.   The Forest Service did not select any riparian-dependent species as a "management indicator species" ("MIS") for the Apache-Sitgreaves National Forest within the LMP.    Instead, only the Mexican spotted owl, northern goshawk, and pronghorn antelope were selected as MIS.

86.   The Forest Service did not identify any MIS in the LMP whose population changes and trends would indicate any effects of management activities on the New Mexico meadow jumping mouse.

87.   While "riparian" was chosen as an "ecological indicator" within the LMP, this only included "cottonwood-willow riparian forest," and "montane willow riparian

22

forest," neither of which encompasses the habitat requirements of the New Mexico meadow jumping mouse.

88.     The management requirements in the LMP for riparian areas and riparian habitat are not sufficient to insure the viability of the New Mexico meadow jumping mouse populations on the Apache-Sitgreaves National Forest.

89.     The LMP includes a guideline for wildlife and rare plants that activities occurring within federally listed species habitat "should apply habitat management objectives and species protection measures from recovery plans."

90.     The LMP also includes a guideline for wildlife and rare plants that modifications, mitigations, or other measures should be incorporated to reduce negative impacts to plants, animals, and their habitats and to help provide for species needs, consistent with project or activity objectives.

91.     Additionally, the needs of localized species, including the New Mexico meadow jumping mouse, "should be considered and provided for during project activities to ensure their limited or specialized habitats are not lost or degraded."

92.     The Forest Service states in the LMP that the conservation of wildlife species is a high priority on the Apache-Sitgreaves National Forest.  "The management approach is to provide a diversity of habitats, well distributed, with ecological conditions that support native and desired nonnative animal species over the long term.  The forests also provide for wildlife and their needs consistent with recovery plans, biological

opinions, conservation strategies, conservation assessments, management plans,

memorandums of understanding (MOUs), and Forest Service direction."

93.     In its guidelines for livestock grazing, the Forest Service states in the LMP

that "[c]onstructed features should be maintained to support the purpose[s] for which they

were built."

94.     The 2015 LMP eliminated the following MIS from the previous 1987 LMP

for the Apache-Sitgreaves National Forest:  pygmy nuthatch (old growth ponderosa pine),

red squirrel (old growth spruce-fir and mixed conifer), Abert squirrel (mid-mature

ponderosa pine), hairy woodpecker (primary cavity excavator in mid-mature aspen,

mixed conifer, ponderosa pine and riparian), plain titmouse (late seral piñon-juniper),

cinnamon teal (wetlands), and other species including yellow-breasted chat, Lincoln's

sparrow, Lucy's warbler, turkey and mule deer.

**III.    The 2014 Biological Assessment and 2015 Biological Opinion for the Apache-Sitgreaves National Forest Land Management Plan**

95.     On May 29, 2014, the Forest Service completed its final Biological

Assessment for the Apache-Sitgreaves LMP.

96.     The Forest Service explains in the Biological Assessment that the LMP

provides programmatic, forest-level direction for the management of the Apache-

Sitgreaves National Forest, and that all site-specific projects or activities must be in

compliance with the LMP.

97.     At the time of the Biological Assessment, the New Mexico meadow

jumping mouse was proposed for listing as an endangered species.

24

98.     The Forest Service concluded in the Biological Assessment that if the New Mexico meadow jumping mouse was listed as an endangered species, the implementation of the LMP for the Apache-Sitgreaves National Forest may affect and is likely to adversely affect the New Mexico meadow jumping mouse and its critical habitat.

99.     The Forest Service further explained that within the Biological Assessment, the Forest Service determined the potential effects of implementing the LMP programmatic direction on all federally listed and proposed species, proposed and designated critical habitats, and candidate species.

100.    On May 13, 2015, FWS issued its Biological Opinion on the environmental impacts resulting from the LMP for the Apache-Sitgreaves National Forest.  FWS found that the LMP may affect the New Mexico meadow jumping mouse, as well as a number of additional threatened and endangered species.

101.    According to the Biological Opinion, the New Mexico meadow jumping mouse was found in twelve locations on the Apache-Sitgreaves National Forest between 2007 and 2012.

102.    FWS claimed in the 2015 Biological Opinion that all twelve of these jumping mouse locations were "likely at or near desired conditions, primarily due to exclusion of livestock grazing, over the last several years."

103.    FWS acknowledged in the 2015 Biological Opinion that livestock grazing (both authorized and unauthorized), in addition to feral horses and elk herbivory, can affect New Mexico meadow jumping mouse habitat.

104.    Livestock grazing is recognized as an adverse effect to streamside vegetation and New Mexico meadow jumping mouse habitat on the Apache-Sitgreaves National Forest.  The primary concern is the removal of important vegetation that serves as cover, and the removal or prevention of the development of graminoid seeds that are needed as food by the mice.

105.    According to the 2015 Biological Opinion, "[w]hile most mouse sites are protected from livestock, they can still be affected by feral horses and elk."

106.    FWS stated in the 2015 Biological Opinion that eleven of the twelve known jumping mouse sites on the Apache-Sitgreaves National Forest are excluded from livestock grazing.

107.    According to the 2015 Biological Opinion, occupied habitat for the New Mexico meadow jumping mouse is located on twelve livestock grazing allotments; but this occupied habitat is excluded from grazing on five of the twelve allotments by fenced exclosures, retirement of portions of the allotments, or non-use due to no grazing permit being issued.

108.    According to the 2015 Biological Opinion, there are desired conditions, objectives, standards and guidelines within the LMP for the Apache-Sitgreaves National Forest that benefit New Mexico meadow jumping mouse habitat.

109.    FWS found in the 2015 Biological Opinion that current livestock grazing on the Apache-Sitgreaves National Forest may have minimal adverse effects to jumping mouse habitat due to riparian closures, limited pasture use, and timing restrictions for

livestock use in riparian areas where they occur.  FWS further found, however, that livestock grazing may still adversely affect important habitats needed by the jumping mouse, and that the LMP standards and guidelines under the Rangeland Program were expected to minimize but not eliminate adverse effects to the jumping mouse.

110.    FWS concluded that the implementation of the Rangeland Program as part of the LMP could result in adverse effects to the jumping mouse and its habitat.

111.    FWS determined in the 2015 Biological Opinion that the implementation of the LMP on the Apache-Sitgreaves National Forest would not jeopardize the continued existence of the New Mexico meadow jumping mouse.  FWS' rationale for this no jeopardy determination included that (1) the majority of known occupied jumping mouse habitat is currently excluded from livestock grazing, but if current management changes grazing consultations would be reintiated; (2) the majority of known occupied mouse sites is not within the planning area, but is within New Mexico; and (3) many standards and guidelines within the LMP, in particular standard 3 and guidelines 32, 71, 76, and 132, serve as conservation measures that are beneficial to the jumping mouse.

112.    FWS did not include an Incidental Take Statement for the New Mexico meadow jumping mouse within the 2015 Biological Opinion.  FWS instead determined that implementation of the LMP for the Apache-Sitgreaves National Forest "is not reasonably certain to result in incidental take of the jumping mouse."  In making this determination, FWS stated that all jumping mouse capture sites and most portions of

known occupied habitat are fenced, excluded from livestock grazing, or closed to public access.

113.   At the time of the 2015 Biological Opinion, critical habitat had been proposed for the New Mexico meadow jumping mouse, but not finalized.  FWS concluded that implementation of the LMP for the Apache-Sitgreaves National Forest "will not destroy or adversely modify proposed critical habitat" for the jumping mouse. FWS's rationale included that the majority of the proposed critical habitat is excluded from livestock grazing and/or protected from other Forest Program activities.

114.   FWS included two conservation recommendations within the Biological Opinion for the New Mexico meadow jumping mouse: (1) FWS recommended that the Forest Service work with FWS to conduct jumping mouse surveys to attempt to find additional jumping mouse populations in areas outside of exclosures and closed areas; and (2) FWS recommended that the Forest Service collect vegetation data inside and outside of protected areas, with annual reports to assist FWS in determining whether activities are providing suitable habitat for the jumping mouse.

IV.   **New Information and Changed Circumstances**

A.   2018 Monitoring Evaluation Report

115.   In August, 2018, the Forest Service issued its Biennial Monitoring Evaluation Report for the Apache-Sitgreaves National Forest.  In the Report, the Forest Service presented its findings from twenty monitoring items for the National Forest.

28

116.    For question 7a, which asks "What is the effect of management upon habitat trends of ecological indicators (aspen, riparian) across the forests," the Report stated that no data was obtained due to a "capacity shortfall."  The Report further explained that due to the lack of resources, "riparian plots have not been established, and no data collection has been accomplished."

117.    Question 31 of the Report asks whether plan objectives are being achieved. One of the objectives was to complete at least five projects to provide for aquatic and riparian associated species and migratory species, but none were completed.

118.    Another objective was to enhance or restore 5 to 25 wet meadows, springs, seeps, or cienegas to proper hydrologic function and native plant and animal species composition, but none were completed.

119.    Another objective was to annually work with partners to reduce animal damage to native willows and other riparian species on an average of 5 miles of riparian habitat.  According to the Report, 0.75 miles of fence was repaired or erected in fiscal year 2016, with none in 2017.

120.    For threatened and endangered species, the Report asks whether the Forest Service is complying with the terms and conditions from the 2015 Biological Opinion. For the New Mexico meadow jumping mouse, the Biological Opinion did not include any terms and conditions, as it did not include an Incidental Take Statement.

121.    The Report also asked whether the Conservation Recommendations from the 2015 Biological Opinion are being implemented.  The two Conservation Recommendations for the jumping mouse are:

1. We recommend that the ASNFs work with the Service to conduct jumping mouse surveys over the next several years to attempt to find additional jumping mouse populations in areas outside of exclosures and closed areas. This information will aid us in understanding the short- and long-term impacts of these LMP activities on the jumping mice, and their subsequent effect on the status of the species.

2. Implement actions to collect vegetation data inside and outside of protected areas to determine whether the PCEs of jumping mouse proposed critical habitat can be met under current Forest Program activities. Annual reports will provide information to assist the Service in determining whether these activities, outside of protected areas, are providing suitable habitat for the jumping mouse.

122.    The Report states that these two Conservation Recommendations are being implemented, but rather than providing the results of any monitoring, the Report asserted: "To implement conservation measures for the New Mexico meadow jumping mouse, the [Apache-Sitgreaves National Forest] entered into an agreement with Carol Chambers (NAU) to conduct surveys during 2016 and 2017."

B.     Plaintiff Center for Biological Diversity's Field Visits and Surveys

123.    In the 2015 Biological Opinion, FWS listed twelve locations where the jumping mouse was found on the Apache-Sitgreaves National Forest:

East Fork Little Colorado River (Montlure)
San Francisco River (Tal-wi-wi)
San Francisco River (Noble)
East Fork Black River (Three Forks)
Nutrioso Creek (Nutrioso)
West Fork Black River (Thompson Ranch)
West Fork Black River (Forest Road 68)

30

West Fork Black River (PS Ranch)
Boggy Creek (Boggy)
Centerfire Creek (Centerfire)
Corduroy Creek (Corduroy)
Campbell Blue Creek (Campbell Blue)

124.    On May 19, 2019, and June 3-5, 2019, staff from Plaintiff Center for

Biological Diversity ("the Center") visited seven of these twelve locations.  In addition,

Center staff visited two Critical Habitat sites in the Little Colorado River drainage, the

upper West Fork of the Little Colorado River and the East Fork of the Little Colorado

River, where jumping mouse have been detected since completion of the 2015 Biological

Opinion.

125.    Of the twelve locations listed in the 2015 Biological Opinion, Center staff

visited the following seven locations:

East Fork Black River (Three Forks)
West Fork Black River (Thompson Ranch)
West Fork Black River (Forest Road 68)
West Fork Black River (PS Ranch)
Boggy Creek (Boggy)
Centerfire Creek (Centerfire)
Corduroy Creek (Corduroy)

Center staff did not visit Campbell Blue Creek (Campbell Blue) because the staff were

advised by multiple Forest Service personnel that the habitat there was completely lost

after the Wallow Fire in 2011.

126.    After listing the above twelve jumping mouse locations, FWS stated in the

2015 Biological Opinion that all of these location sites were likely at or near desired

conditions, primarily due to the exclusion of livestock grazing.  The Center's site

visits and surveys to seven of these twelve locations in the spring of 2019 found that this statement from the 2015 Biological Opinion is no longer accurate.

127.    The Center provided extensive documentation and photographs of its visits to these New Mexico meadow jumping mouse locations to the Forest Service.

128.    At the New Mexico meadow jumping mouse critical habitat at Boggy Creek, the Center documented widespread habitat destruction with severe streamside trampling, denuding and loss of the essential dense and tall herbaceous forbs and sedges. The Center also provided photos of stray horses and cattle that were causing this habitat destruction.  The Center further documented a damaged habitat exclosure.

129.    The Center similarly documented widespread habitat destruction at the New Mexico meadow jumping mouse critical habitat at Centerfire Creek, including extreme grazing of the streamside herbaceous vegetation and the absence of riparian woody vegetation.  Center staff discovered heavy fresh horse, cow, and elk sign throughout this drainage.  Cattle fencing was found along parts of the drainage, but it was not excluding horses, elk, or cows.  There was a dramatic difference in the quality of habitat that was inside and outside of an elk-fenced enclosure at this location.

130.    Center staff also documented severely damaged New Mexico meadow jumping mouse habitat at the designated critical habitat at Corduroy Creek.  Heavy fresh cow and elk sign were seen throughout the drainage, and severe trampling of vegetation by elk and cattle was pervasive.  Cattle fencing was observed along parts of the drainage, but it was not excluding elk or cows.  Large numbers of cows were present in the upper

32

part of the Corduroy Creek drainage immediately connected to Corduroy Creek, with no fencing present to keep the cows from further damaging Corduroy Creek.

131.   Center staff observed light to moderate grazing impacts in the New Mexico meadow jumping mouse critical habitat in the riparian areas of the West Fork of the Black River near the FR 68 bridge, including fresh horse sign.

132.   Center staff also visited the West and East Forks of the Little Colorado River.  At the West Fork Little Colorado River in jumping mouse critical habitat, staff noted moderate grazing damage, inadequately fenced riparian habitat and fresh stray horse sign.

133.   As Plaintiffs summarized in their notice letter,

In summary, stray horses, stray cows, likely owned cows and non-native elk are destroying and adversely modifying jumping mouse Critical Habitat in the western Apache National Forest in the West Fork of the Black River and its drainages and in the West Fork of the Little Colorado. The stray horses, stray cows, and non-native elk have caused severe damage to Boggy Creek and to Centerfire Creek. Critical Habitat along the West Fork of the Black River has been moderately damaged by stray horses. Stray horses are present just above the riparian Critical Habitat of the West Fork of the Black River with no barriers to prevent their continued movement into Critical Habitat along the West Fork of the Black River. Critical Habitat along the lower East Fork of the Black River has been moderately damaged by stray horses and cows. No barriers are present to prevent continued invasion and damage from the stray horses and cows into the lower East Fork of the Black River. Further to the East, Corduroy Creek has been severely damaged by likely owned cows and non-native elk.

## V.   Plaintiffs' ESA Notice Letters

134.   On July 27, 2019, Plaintiffs sent a notice letter to the Secretary of Interior, FWS, and the Forest Service, identifying the ESA violations included in this Complaint concerning the failure to reinitiate consultation on the LMP for the Apache-Sitgreaves

33

National Forest, and the Forest Service's failure to carry out a conservation program for the New Mexico meadow jumping mouse on the Apache-Sitgreaves National Forest.

135.   On September 5, 2019, the Forest Service responded to the notice letter.  As part of its response, the Forest Service declined to reinitiate consultation with FWS concerning the ongoing implementation of the LMP for the Apache-Sitgreaves National Forest.  In response to the detailed new information and changed circumstances provided by Plaintiffs, which trigger the need for the reinitation of consultation, the Forest Service asserted:

> Section 7 consultation is required where activities are authorized, funded, or carried out by an agency.  Actions such as unauthorized grazing by livestock are not authorized, funded, or carried out by the Forest Service.  The effects of the unauthorized livestock grazing, along with the elk use (managed by the State Agencies), climate change, and wildfires were considered as part of the environmental baseline for the LMP action.  However, these impacts are not the result of the Federal action (LMP) and any changes that may be occurring in the baseline do not change the effects caused by the LMP, which as discussed above, was evaluated as a framework programmatic action.

136.   On September 13, 2019, Plaintiffs sent a notice letter to the Secretary of Interior, FWS, and the Forest Service that included the allegation that FWS is in violation of its mandatory obligation under Section 4 of the ESA to develop and implement a Recovery Plan for the New Mexico meadow jumping mouse.

137.   On January 8, 2020, Plaintiffs sent an additional notice letter to the Secretary of Interior and FWS concerning their ongoing failure to prepare a Recovery Plan for the New Mexico meadow jumping mouse, as required by Section 4 of the ESA.

1

## CLAIMS FOR RELIEF

2

3

### FIRST CLAIM FOR RELIEF

4

The Forest Service and FWS are in Ongoing Violation of the ESA for Failing to
Reinitiate and Complete Consultation on the Apache-Sitgreaves National Forest LMP

5

6

138.    Plaintiffs hereby incorporate by reference all preceding paragraphs.

7

8

139.    Section 7(a)(2) of the ESA requires each federal agency, in consultation

9

with FWS, to ensure that any action authorized, funded, or carried out by the agency is

10

not likely to jeopardize the continued existence of any threatened or endangered species,

11

or result in the destruction or adverse modification of the critical habitat of such species.

12

13

16 U.S.C. § 1536(a)(2).

14

140.    The reinitiation of formal consultation is required and must be requested by

15

FWS or the action agency where discretionary federal involvement or control over the

16

17

action has been retained or is authorized by law, and if (1) the amount or extent of taking

18

specified in the incidental take statement is exceeded; (2) new information reveals effects

19

of the action that may affect listed species or critical habitat in a manner or to an extent

20

not previously considered; (3) the action is modified in a manner that causes an effect to

21

22

the listed species or critical habitat that was not considered in the biological opinion; or

23

(4) a new species is listed or critical habitat designated that may be affected by the

24

identified action.  50 C.F.R. § 402.16(a).

25

26

141.    The amount and extent of taking of the New Mexico meadow jumping

27

mouse as specified in the 2015 Biological Opinion for the Apache-Sitgreaves National

28

35

Forest LMP has been exceeded.  New information has revealed effects of the Apache-Sitgreaves National Forest LMP that may affect the New Mexico meadow jumping mouse and its critical habitat in a manner and to an extent not previously considered.  The Apache-Sitgreaves National Forest LMP has been modified in a manner that causes effects to the New Mexico meadow jumping mouse and its critical habitat that was not considered in the 2015 Biological Opinion.

142.   The Forest Service's assertion that reinitiation of consultation is not required because the adverse impacts documented by Plaintiffs "are not the result of the Federal action (LMP) and any changes that may be occurring in the baseline do not change the effects caused by the LMP," is arbitrary, capricious, and contrary to the plain terms of ESA implementing regulations as well as the purposes of section 7 of the ESA. FWS' no-jeopardy finding for the jumping mouse in the 2015 Biological Opinion was expressly based on the "environmental baseline for the planning area," as well as the Forest Service's and FWS' findings that riparian exclosures and other measures committed to in the LMP would "reduce impacts to jumping mouse from livestock grazing."  Accordingly, the drastic deterioration in conditions documented by Plaintiffs and the fact that LMP is not, in fact, being carried out in a manner that reduces impacts to the jumping mouse, means that, among other reinitation criteria being satisfied, "new information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered."  50 C.F.R. § 402.16(a)(2).

143.   The ongoing failure of the Forest Service and FWS to reinitiate and

complete consultation on the ongoing impacts of the Apache-Sitgreaves National Forest LMP on the endangered New Mexico meadow jumping mouse violates the ESA.  16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.16(a).

144.    Additionally, in the absence of the required reinitiated consultation, the Forest Service is in ongoing violation of its obligation under Section 7 of the ESA to insure that its actions are not likely to jeopardize the continued existence of the New Mexico meadow jumping mouse.  16 U.S.C. § 1536(a)(2).

## SECOND CLAIM FOR RELIEF

The Secretary of Interior and FWS Violated the ESA in Failing to Develop and Implement a Recovery Plan for the New Mexico Meadow Jumping Mouse

145.    Plaintiffs hereby incorporate by reference all preceding paragraphs.

146.    Section 4 of the ESA requires the Secretary of Interior to develop and implement Recovery Plans for threatened and endangered species, unless the Secretary finds that such a plan will not promote the conservation of the species.  16 U.S.C. § 1533(f).

147.    The New Mexico meadow jumping mouse has been designated as an endangered species since July 10, 2014.  79 Fed. Reg. 33,119 (June 10, 2014).

148.    FWS has recognized since at least 2014 that the New Mexico meadow jumping mouse faces a high probability of extinction in the near term, and decreasing viability in the long-term, because the agency expected that all remaining populations are vulnerable to extirpation.

149.    The Secretary and FWS have not developed or implemented a Recovery Plan for the New Mexico meadow jumping mouse, in violation of the ESA.  16 U.S.C. § 1533(f).

150.    The Secretary and FWS's failure to develop and implement a Recovery Plan for the New Mexico meadow jumping mouse violates the ESA, 16 U.S.C. § 1533(f), and is subject to judicial review under the ESA citizen suit provision, 16 U.S.C. § 1540(g).

151.    The Secretary and FWS's failure to develop and implement a Recovery Plan for the New Mexico meadow jumping mouse also constitutes "agency action unlawfully withheld or unreasonably delayed" pursuant to the APA.  5 U.S.C. § 706(1).

**THIRD CLAIM FOR RELIEF**

The Forest Service is in Violation of Section 7(a)(1) of the ESA for Failing to Carry Out, with FWS' Assistance, Programs for the Conservation of the New Mexico Meadow Jumping Mouse on the Apache-Sitgreaves National Forest

152.    Plaintiffs hereby incorporate by reference all preceding paragraphs.

153.    When enacting the ESA, Congress intended to halt and reverse the trend toward species extinction, whatever the cost.  *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 184 (1978).

154.    Section 7(a)(1) of the ESA requires all federal agencies to consult with FWS and to act with FWS' assistance to carry out conservation programs for endangered species.  16 U.S.C. § 1536(a)(1).  "Conservation" is defined by the ESA to mean to use all methods and procedures which are necessary to bring an endangered species to the

point at which conservation efforts are no longer necessary.  16 U.S.C. § 1532(3).

155.    Section 7(a)(1) of the ESA creates an affirmative duty: it requires federal agencies to take proper steps within their power to conserve endangered species. *Tennessee Valley Authority*, 437 U.S. at 183.

156.    The Forest Service has acknowledged the need for, but has failed to implement, various measures and obligations from the LMP that are necessary to address adverse impacts to the New Mexico jumping mouse and its critical habitat, and to further the conservation of the species on the Apache-Sitgreaves National Forest.  In the absence of an effective conservation program, such adverse effects continue to occur on the Apache-Sitgreaves National Forest and the status of the species continues to deteriorate. The Forest Service has also failed to determine the objectives that would provide for the removal of the jumping mouse from listing as an endangered species through appropriate conservation measures, as required by NFMA.  36 C.F.R. § 219.19(1)(7) (1982). Moreover, FWS has failed to develop and implement a Recovery Plan for the New Mexico meadow jumping mouse, as required by the ESA. 16 U.S.C. § 1533(f).

157.    The Forest Service has failed to utilize its authorities to effectively protect and conserve the highly endangered New Mexico meadow jumping mouse on the Apache-Sitgreaves National Forest from authorized and unauthorized livestock grazing and known grazing and other adverse impacts resulting from horses and elk.

158.    The Forest Service has violated and remains in ongoing violation of its Section 7(a)(1) obligation to, in consultation with FWS, carry out a conservation program

for the New Mexico meadow jumping mouse on the Apache-Sitgreaves National Forest.

16 U.S.C. § 1536(a)(1).

**FOURTH CLAIM FOR RELIEF**

The Forest Service Violated NFMA in Developing and Approving the 2015 LMP for the
Apache-Sitgreaves National Forest, as the LMP Fails to Insure and Maintain a Viable
Population of the New Mexico Meadow Jumping Mouse in the Planning Area

159.    Plaintiffs hereby incorporate by reference all preceding paragraphs.

160.    The Forest Service is required by NFMA to manage wildlife habitat to

maintain "viable populations" of wildlife species in the planning area.  36 C.F.R. §

219.19 (1982).  To be "viable," a population must have the estimated numbers and

distribution of reproductive individuals to insure its continued existence is well

distributed in the planning area.  *Id.*  To insure that viable populations will be maintained,

NFMA requires the Forest Service to provide habitat to support, at least, a minimum

number of reproductive individuals and that habitat must be well distributed so that those

individuals can interact with others in the planning area.  *Id.*

161.    NFMA requires the Forest Service to identify "management indicator

species," which "shall be selected because their population changes are believed to

indicate the effects of management activities."  36 C.F.R. § 219.19(a)(1) (1982).  "In the

selection of management indicator species, threatened and endangered species, and

species with special habitat needs that may be influenced significantly by planned

management programs must be represented where appropriate.  *Id.*

162.    To insure and maintain viable populations, NFMA further requires the

40

Forest Service to identify the habitat that it determines to be critical for threatened and endangered species, and prescribe measures to prevent the destruction or adverse modification of such habitat.  36 C.F.R. § 219.19(a)(7) (1982).   Additionally, "[o]bjectives shall be determined for threatened and endangered species that shall provide for, where possible, their removal from listing as threatened and endangered species through appropriate conservation measures, including the designation of special areas to meet the protection and management needs of such species."  *Id*.

163.   The Forest Service's duty to insure viable, self-sustaining populations of fish and wildlife species applies with special force to "sensitive" species.  *Inland Empire Public Lands Council v. U.S. Forest Service*, 88 F.3d 754, 759 (9th Cir. 1996).  The Forest Service has identified the New Mexico meadow jumping mouse as a sensitive species since 1990.

164.   The New Mexico meadow jumping mouse was also formally designated as endangered with extinction at the time the Forest Service prepared the 2015 LMP.

165.   The Forest Service did not select the New Mexico meadow jumping mouse as a management indicator species in the 2015 LMP.  The Forest Service did not identify in the LMP the habitat determined to be critical to the jumping mouse, or prescribe measures to prevent the destruction or adverse modification of such habitat.  The Forest Service did not determine in the LMP the objectives for the jumping mouse that would provide for the species removal from listing as an endangered species through appropriate conservation measures, including the designation of special areas to meet the protection

41

and management needs of the species.

166.    The Forest Service did not identify any MIS to represent riparian habitat in the 2015 LMP, and did not identify any MIS whose population changes or trends would indicate any effects of activities on the New Mexico meadow jumping mouse or its habitat.

167.    In developing and approving the 2015 LMP, the Forest Service failed to maintain and insure a viable population of the New Mexico meadow jumping mouse in the planning area, in violation of NFMA.  16 U.S.C. § 1604(g)(3)(B); 36 C.F.R. § 219.19 (1982).  The 2015 LMP is therefore arbitrary, capricious, not in accordance with law, and should be held unlawful and set aside.  5 U.S.C. § 706(2)(A).

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully requests that this Court:

A.    Declare that the Forest Service and FWS are in ongoing violation of the ESA for failing to reinitiate and complete consultation on the ongoing impacts of the LMP for the Apache-Sitgreaves National Forest;

B.    Declare that the Secretary of Interior and FWS are in ongoing violation of the ESA by failing to develop and implement a Recovery Plan for the New Mexico meadow jumping mouse;

C.    Declare that the Forest Service has violated and remains in violation of Section 7(a)(1) of the ESA for failing to consult with FWS and with FWS' assistance to carry out conservation programs for the New Mexico meadow jumping mouse on the

Apache-Sitgreaves National Forest;

D.     Declare that the Forest Service violated NFMA in developing and approving the 2015 LMP for the Apache-Sitgreaves National Forest;

E.     Order the Forest Service and FWS to promptly reinitiate and complete ESA consultation on the ongoing impacts of the LMP for the Apache-Sitgreaves National Forest on the New Mexico meadow jumping mouse;

F.     Order the Secretary of Interior and FWS to promptly develop and implement a Recovery Plan for the New Mexico meadow jumping mouse, in full compliance with Section 4 of the ESA;

G.     Order the Forest Service to consult with FWS and with FWS' assistance to carry out conservation programs for the New Mexico meadow jumping mouse on the Apache-Sitgreaves National Forest, in compliance with ESA Section 7(a)(1);

H.     Remand the 2015 LMP for the Apache-Sitgreaves National Forest to the Forest Service with instructions to provide the protections, necessary measures, objectives, and procedures to insure and maintain viable population of the New Mexico meadow jumping mouse on the Apache-Sitgreaves National Forest;

I.     Order the Forest Service to take the actions necessary to prevent any further adverse impacts to New Mexico meadow jumping mouse habitat on the Apache-Sitgreaves National Forest until the agency can demonstrate full compliance with the ESA and NFMA;

J.     Award to Plaintiffs their costs, expenses, expert witness fees, and

43

reasonable attorney fees pursuant to applicable law including the ESA, 16 U.S.C. §

1540(g) and Equal Access to Justice Act, 28 U.S.C. § 2412;

      K.     Grant the Plaintiffs such further relief as may be just, proper, and equitable.

Dated:  February 20, 2020.     Respectfully submitted,

*/s/ Marc D. Fink*
Marc D. Fink (MN Bar No. 343407)
Center for Biological Diversity
209 East 7th Street
Duluth, Minnesota 55805
Tel: 218-464-0539
Email: mfink@biologicaldiversity.org
*Applicant Pro Hac Vice*

Brian Segee (Cal. Bar No. 200795)
Center for Biological Diversity
660 S. Figueroa Street, Suite 1000
Los Angeles, CA 90017
Tel: 805-750-8852
Email: bsegee@biologicaldiversity.org
*Applicant Pro Hac Vice*

*Attorneys for Plaintiffs*